**FIRST INDIANA FEDERAL SAVINGS BANK, Appellant (Plaintiff Below),**

**v.**

**William C. HARTLE and Joyce C. Hartle, Appellees (Defendants Below).**

**No. 48A02–8907–CV–329.**

Court of Appeals of Indiana,
Third District.

March 11, 1991.

Rehearing Denied April 25, 1991.

Theodore J. Nowacki, Bose McKinney & Evans, Indianapolis, for appellant.

William C. Kreegar, Anderson, for appellee Joyce C. Hartle.

HOFFMAN, Presiding Judge.

Plaintiff-appellant First Indiana Federal Savings Bank appeals the trial court's

grant of summary judgment in favor of the Hartles, defendants-appellees.[1]

The facts relevant to this appeal disclose that on October 28, 1963, Loell and Bonnie Good executed a note in favor of Pendleton Loan Association, predecessor in interest to First Indiana. This note was secured by a mortgage duly recorded on October 30, 1963. Over the course of time, this real estate was conveyed several times. On June 24, 1971, Sarah Vilcsek, the owner of the real estate, conveyed the real estate by warranty deed to the Hartles.

In December, 1972, the Hartles obtained a loan from Pendleton Loan Association to pay for the construction of a building on part of the real estate. This loan was secured by a mortgage on approximately one-half of the real estate. At this same time, Pendleton Loan Association executed and recorded a Partial Release of Mortgage for the 1963 mortgage. Although the document was termed a "partial" release, in actuality, all of the real estate encumbered by the 1963 mortgage was released.

On June 12, 1978, the Hartles obtained a loan from the First National Bank of Madison County. This loan was secured by a mortgage on the real estate.

The First National Bank of Madison County filed suit on the note and to foreclose the 1978 mortgage in February, 1983. First Indiana (formerly Pendleton Loan Association) was named a party to the action. However First Indiana did not claim or assert any interest in the real estate concerning its 1963 mortgage.

Meanwhile, the Hartles continued to make payments on the debt secured by the 1963 mortgage and 1972 mortgage to First Indiana until 1984 when Joyce filed a petition under Chapter 11 of the Federal Bankruptcy Code. First Indiana filed its proof of claim in this proceeding regarding both the 1963 and 1972 mortgages. In April 1985 the bankruptcy proceedings were dismissed by stipulation.

The First National Bank of Madison County acquired First Indiana's 1972 note and mortgage. A summary judgment decree of foreclosure was granted to First National Bank of Madison County in June 1985.

On November 27, 1985, First Indiana filed a complaint against the Hartles to recover the outstanding balance on the 1963 note which was secured by the mortgage. Both parties filed for summary judgment. The trial court granted summary judgment in favor of the Hartles.

Two issues are dispositive of this appeal:

(1) whether a grantee who, in a warranty deed, assumes and agrees to pay a mortgage becomes personally liable for the debt secured by the mortgage; and

(2) whether First Indiana had the option of suing on the mortgage indebtedness without first seeking foreclosure.

### Preface

This controversy centers around a 1963 note and mortgage and a subsequent warranty deed. The mortgage note was executed on October 28, 1963 by Loell and Bonnie Good and payable ·to Pendleton Loan Association. It was for the sum of $13,600.00 to be paid in monthly installments for 20 years. The note provided that it was secured by a certain real estate mortgage. The mortgage, in turn, specifically provided that it was:

"... to secure the repayment of a loan made by the association to the mortgagors as evidenced by their promissory note of even date herewith in the principal sum of $13,600.00, payable in installments with interest and attorney's fees, the last installment being due and payable 20 years after date....

The mortgagors covenant and agree with the association that they will:

(1) pay said note according to its terms...."

In June, 1971, Sarah Vilcsek was the owner of the real estate by warranty deed. Ms. Vilcsek then conveyed the real estate by warranty deed to William and Joyce Hartle. The deed provided that the Hartles were taking the real estate:

---

1. William Hartle did not file or serve a brief in     this appeal.

"Subject to a mortgage to Pendleton Loan Association dated October 28, 1963, and recorded on October 30, 1963, in Mortgage Record 475, page 583, Records of Madison County, Indiana, which mortgage the Grantees herein hereby assume and agree to pay."

### I.

Joyce argues that First Indiana may not seek personal liability against them on the note. First Indiana avers that the covenant in the deed is sufficient to confer personal liability to the Hartles for repayment of the note.

■ Joyce asserts that IND.CODE § 32–8–11–2 (1988 Ed.) prevents First Indiana from pursuing them. However this section only states that a mortgage will not be construed as *implying* a covenant for the payment of a sum intended to be secured. An action for personal liability is maintainable where an *express* covenant for payment is contained in the mortgage.[2] This Court in *Warner v. Webber Apartments, Inc.* (1980), Ind.App., 400 N.E.2d 1180, 1181, quoted the rule on covenants in mortgages imparting personal liability:

" 'It is the general rule, except where statutes provide otherwise, that if the mortgage contains a covenant to pay the debt secured, the mortgagor is personally liable and an action in debt will lie on the covenant. Jones on Mortgages, 8th Ed., Vol 3, Sec. 1579; 41 C.J. Mortgages, Secs. 222, 223.'

*Stamper v. Link* (1946), 117 Ind.App. 212, at 219–220, 69 N.E.2d 600, at 602, modified 117 Ind.App. 212, 71 N.E.2d 128."

While the covenant in this case is not an example of model draftmanship in that it could have been more specific as to the note, it is an express covenant nonetheless to pay the mortgage indebtedness. The Hartles did not take the real estate simply subject to the mortgage; through the covenant, the Hartles did "assume and agree" to pay the mortgage indebtedness. *Hancock v. Fleming* (1885), 103 Ind. 533, 3 N.E. 254.

■ While it is true that the covenant states that grantees would assume and agree to pay the "mortgage," it has long been held that a mortgage is merely security for the payment of a debt. *Reasoner v. Edmundson* (1854), 5 Ind. 393. After all, it is possible to give a mortgage to secure a debt without assuming personal liability for that debt. *Huntingburg Production Credit v. Griese* (1983), Ind.App., 456 N.E.2d 448. However, in this case, when the Hartles assumed and agreed to pay the mortgage through the assumption clause in the warranty deed, they were clearly assuming and agreeing to pay the mortgage indebtedness. When First Indiana released the mortgage, it was simply releasing its security interest, making it an unsecured creditor. The release of the mortgage in no way was a release of the Hartles' obligation to discharge the mortgage indebtedness. The release only prevented First Indiana from pursuing its right to foreclose.[3]

### II.

■ Joyce argues that First Indiana is estopped from seeking personal liability on the note since First Indiana released the mortgage, failed to reinstate the mortgage, and consequently failed to pursue foreclosure or to assert any interest in the foreclosure initiated by First National Bank of Madison County. First Indiana contends that it did not have to reinstate the mortgage and to foreclose on the mortgage to be able to pursue the Hartles on the promissory note since it is proceeding solely as an unsecured creditor.

■ Since First Indiana was unable to foreclose because of the release of the

---

**2.** In the absence of an express agreement to pay, a mortgagee's remedy is confined to foreclosure only. IND.CODE § 32–8–11–2 (1988 Ed.); *Maloney v. Home Loan & Trust Co.* (1933), 97 Ind.App. 564, 186 N.E. 897, mandate modified 97 Ind.App. 564, 187 N.E. 682.

**3.** First Indiana may have had the option to restore the mortgage in equity. However, that is not an issue presented in this appeal and therefore, will not be addressed.

mortgage, Joyce asserts that First Indiana is without a remedy to collect the unpaid balance on the mortgage note. This is not true. The courts have held that the land in a mortgage is a primary fund for the payment of the mortgage indebtedness. *Durham v. Craig* (1881), 79 Ind. 117. However, this does not limit a mortgagee from pursuing its remedy on a promissory note. In none of the following cases cited by the Hartles, *Hancock, supra; Springer v. Foster* (1901), 27 Ind.App. 15, 60 N.E. 720; and *Gregory v. Arms* (1911), 48 Ind.App. 562, 96 N.E. 196, had the grantees assumed and agreed to pay the mortgage indebtedness being enforced. The courts in this state have long held that if an obligor has personal liability for the debt secured by a mortgage, then a lender may sue on the debt or foreclose the mortgage.

*Cross v. Burns* (1861), 17 Ind. 441; *Fairman v. Farmer* (1853), 4 Ind. 436. An action on a note and an action to foreclose a mortgage to secure payment of such note are distinct actions. *Lewis v. Davis* (1944), 114 Ind.App. 715, 55 N.E.2d 119.

Similarly, Indiana statutes do not prevent First Indiana from pursuing an action on the mortgage indebtedness without seeking foreclosure first. The remedy of the mortgagee is confined to the property mortgaged only when there is no express agreement in the mortgage nor any separate instrument given for the payment of the sum secured thereby. IND.CODE § 34–1–53–2 (1988 Ed.). IND.CODE § 34–1–53–7 (1988 Ed.) restricts a mortgagee only from foreclosing a mortgage *while at the same time* suing on the debt in a separate action.[4] Unlike other states which have anti-deficiency statutes or single-action statutes which prevent a mortgagee from maintaining an action for a money judgment on the mortgagor's promissory note without first foreclosing on the security, Indiana has no such restrictions. *See: Mischel v. Austin* (1985), N.D., 374 N.W.2d 599; *H & F Hogs v. Huwe*

(1985), N.D., 368 N.W.2d 553; *Tanner v. Shearmire* (1989), 115 Idaho 1060, 772 P.2d 267.

First Indiana was entitled to sue directly on the note without first foreclosing the property.

Reversed.

GARRARD, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting

I fully agree that the Hartles contracted with Vilcsek to pay the "mortgage indebtedness" and that such agreement could have been enforced directly against the Hartles by the Bank. I further agree that a mortgage is security for payment of a debt. Additionally, I agree that "it is possible to give a mortgage to secure a debt without assuming personal liability for that debt." Slip Opinion at 836. This is precisely why I believe assumption of a mortgage does not also assume the underlying debt unless specifically stated.

The "mortgage indebtedness" is the indebtedness set forth in the mortgage. It recites a principal amount and it sets forth the manner in which that "mortgage indebtedness" is to be paid. The person assuming that mortgage indebtedness assumes only the mortgage obligation, not the underlying obligation which, in the mortgage, the mortgagor may have separately and independently agreed to pay. The obligations are certainly interrelated, but they are not identical. If the "mortgage indebtedness" and the obligation upon the underlying promissory note were one and the same, there would be no need to include in the original mortgage instrument a specific and severable promise upon the part of the mortgagor to "pay said note according to its terms". Slip Opinion at 4. Here, as in *Warner v. Webber Apartments, Inc.* (1980) 3rd Dist., Ind.App., 400 N.E.2d 1180, the original mortgagor agreed to pay, not only the mortgage indebtedness, but the underlying obligation as well. Without question, in *Warner*, as here, the

---

4. A lender may sue on both the debt and the mortgage in the same action. After the sale of the property, a deficiency judgment may be entered against the obligors which judgment may be levied against other property of the debtor. IND.CODE § 34–1–53–3, 5, and 6.

original mortgagor was bound upon both obligations. That does not mean that a subsequent mortgage assumption carries with it both obligations and the *Warner* case does not so hold.

When Pendleton, in 1972, released all of the real estate from the 1963 mortgage, that release extinguished Hartles' obligation for the simple reason that the Hartles' obligation was specifically tied to and was coextensive with the mortgage itself.[1] Conceivably, and by some circumstance, the Hartles may be obligated by virtue of the 1972 mortgage and/or upon the 1978 loan and mortgage. They are not, however, obligated upon the 1963 mortgage.

I am in total agreement with the concluding paragraph of the majority decision. A mortgage foreclosure action is not a condition precedent to a suit upon a promissory note. However, by emphasizing the "while at the same time" language of I.C. 34-1-53-7, a possible implication is created to the effect that if a court in a foreclosure action neglects to impose a personal deficiency judgment against the obligor, the lender, after foreclosure and sale of the real estate, may bring a new and independent action against someone who assumed the mortgage but not the underlying debt.

Without regard to any such implication, it is my view that First Indiana was not entitled to recover from the Hartles upon a debt not of their making, when a foreclosure action was precluded as a matter of law. Whether Vilcsek remains obligated upon the underlying promissory note is not of moment. When the mortgage obligation was extinguished, Hartles' obligation to the Bank was also extinguished.

I would affirm the summary judgment.

---

**1.** Perhaps the Bank was ill-advised to release the 1963 mortgage but it did so and is bound by the legal effect of that release. In this regard, in footnote 3, the majority notes that at or prior to this action, no effort was made to reinstate the 1963 mortgage as having been released by mistake. This very circumstance was clearly within the contemplation of the trial court and was specifically set forth in Conclusion 4. of the

Summary Judgment. To the extent that the Hartles made payments upon the 1963 mortgage after the release, they may have been volunteers and barred from recovery of those amounts.

